UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SOUTHRIDGE ETHANOL, INC,                )
                                        )
        Plaintiff,                      )
                                        )         CIVIL ACTION NO.
VS.                                     )
                                        )         3:06-CV-2362-G
SOUTH LOUISIANA ETHANOL L.L.C.,         )
ET AL.,                                 )         **ECF**
                                        )
        Defendants.                     )

**MEMORANDUM OPINION AND ORDER**

Before the court is the motion of the defendants, South Louisiana Ethanol LLC ("SLE"), John Paul ("Paul"), and William A. Hurst ("Hurst") (collectively, "the defendants"), to dismiss for lack of personal jurisdiction[1] and for an evidentiary

---

[1] The defendants have identified their motion to dismiss for lack of personal jurisdiction as a motion to "dismiss this lawsuit pursuant to Federal Rule of Civil Procedure ("FRCP") Rule 56." Defendants' Memorandum in Support of Motion to Dismiss at 1. The defendants' reference to Rule 56 -- the rule governing motions for summary judgment -- is confusing. However, because the memorandum cites cases with the appropriate standard for dismissal in accordance with Rule 12(b)(2), the court will treat the motion as a motion to dismiss under that rule rather than a motion for summary judgment pursuant to Rule 56.

hearing regarding their motion to dismiss. For the reasons set forth below, both motions are denied.

## I. BACKGROUND

The plaintiff, Southridge Ethanol, Inc. ("Southridge" or "the plaintiff"), is a Nevada corporation with its principal place of business in Dallas, Texas. Plaintiff's Complaint ("Complaint") ¶ 1. Defendant SLE is a Louisiana corporation with its principal place of business in Louisiana. *Id.* ¶ 2.

This case arose after Alex Smid ("Smid") -- the president and director of Southridge -- saw an internet advertisement placed by SLE for a "Complete Fuel-Ethanol Distillery for Sale" and contacted Paul -- the person identified in the advertisement -- to discuss the possibility of acquiring the advertised ethanol plant. *Id*. ¶¶ 8-9. After multiple telephone discussions, Smid traveled to Louisiana to meet with Paul, inspect the equipment being offered for sale, and further discuss terms for the potential sale. *Id.* ¶ 10. During these discussions, Smid specifically inquired about the owner of the equipment. *Id.* ¶ 11-13. Hurst told Smid that he, Paul, and "Kenny," as owners of SLE, owned the plant. *Id.* Moreover, because Hurst informed Smid that Paul could negotiate the terms of the sale on behalf of SLE, Smid sent a formal offer to Paul, which was rejected. *Id.* ¶ 14.

Several weeks later, Hurst contacted Smid to inform him that he would be in charge of negotiating the terms of sale and that SLE was "keen to work something

out." *Id.* ¶ 15.  About a week later, Paul contacted Smid by telephone with an acceptable counteroffer. *Id.* ¶ 16.  As a result, Southridge sent SLE a Letter of Intent describing the basic terms upon which Southridge would purchase the equipment. *Id.*  The Letter of Intent was signed on behalf of SLE and transmitted to Southridge. *Id.* ¶ 17.  Southridge then issued a press release announcing the signing of the Letter of Intent. *Id.*

A few days after issuing the press release, Smid received a call from Mark Mollow. *Id.* ¶ 18.  Mollow, who had prior dealings with Earth Biofuels, Inc. ("Earth Biofuels"), informed Smid that Earth Biofuels held a half ownership in the equipment that Southridge agreed to purchase in the Letter of Intent. *Id.*  Shortly thereafter, Southridge received a letter from Earth Ethanol, Inc. ("Earth Ethanol") -- one of Southridge's competitors --  claiming that it had previously acquired a fifty percent interest in SLE and that it had not been notified of, or consented to, the acquisition attempt by Southridge. *Id.* ¶ 20.  Four days later, Southridge received another letter from Earth Ethanol asserting that SLE had not obtained the proper approvals necessary for the proposed asset sale to Southridge and warned Southridge not to go through with the transaction because of Earth Ethanol's apparent rights in the equipment. *Id.* ¶ 21.  Southridge now claims SLE did not have "complete and unfettered right to sell" the equipment as represented by Paul, Hurst, and SLE. *Id.* ¶ 24.  Southridge brings claims for fraud, conspiracy, and negligent misrepresentation

because of the defendants' misrepresentations concerning their authority to sell the equipment.  *Id.* ¶¶ 29-42.

## II. ANALYSIS

### A. The Motion for an Evidentiary Hearing

The defendants seek an evidentiary hearing on their motion to dismiss to show that none of the defendants made any false representations inasmuch as SLE, at all relevant times, owned the property in question.  Memorandum in Support of Motion for an Evidentiary Hearing Regarding Defendants' Pending Motion to Dismiss for Lack of Personal Jurisdiction ("Memorandum in Support of Hearing") at 4.  However, the defendants' ownership of the equipment is only part of the issue in this case.  Southridge's tort claims relate not only to the issue of ownership but also to the defendants' right to sell the subject property.  Yet, in their motion for an evidentiary hearing, the defendants merely assert that they have evidence to prove their ownership of the property at all relevant times; they do not address their "unfettered right to sell" the property.  *See* Plaintiff's Memorandum in Opposition to Defendants' Motion for an Evidentiary Hearing Regarding Defendants' Pending Motion to Dismiss at 2.

Southridge's intentional tort claims are relevant to the jurisdictional issue because they determine which standard the court should apply to determine whether personal jurisdiction exists over these defendants.  The defendants do not dispute

that they directed communications to Southridge in an effort to sell equipment; instead, they dispute the issue of whether these communications were tortious. Memorandum in Support of Hearing at 4. Thus, the defendants seek to resolve the ultimate issues in this case -- whether they committed a tort against the plaintiff -- at a hearing on a motion to dismiss. Consequently, an evidentiary hearing would not be helpful to the court, and the motion for such a hearing is denied.

B. The Factual Standard: A *Prima Facie* Case

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Gardemal v. Westin Hotel Company*, 186 F.3d 588, 592 (5th Cir. 1999). If the district court chooses to decide the matter without an evidentiary hearing, the plaintiff may meet his burden by presenting a *prima facie* case for personal jurisdiction. *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.

The court will take the allegations of the complaint as true, except where they are controverted by opposing affidavits, and all conflicts in the facts are resolved in favor of the plaintiff. *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592. In making its determination, the court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of recognized discovery methods. *Allred v. Moore &*

*Peterson*, 117 F.3d 278, 281(5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998); *Thompson v. Chrysler Motors Corporation*, 755 F.2d 1162, 1165 (5th Cir. 1985).

### C. The Legal Standard

A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent that he would be amenable to the jurisdiction of a state court in the same forum. *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984). Applying state law, this court must first determine whether Texas, the forum state, could assert long-arm jurisdiction. *Id*. Because the Texas long-arm statute confers jurisdiction to the limits of the federal constitution, *Access Telecom, Inc. v. MCI Telecommunications Corporation*, 197 F.3d 694, 716 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000); *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984), the court need only concern itself with the federal due process inquiry. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Wilson*, 20 F.3d at 647 n.1; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 17.041 *et seq.* (Vernon 1997) (Texas long-arm statute).

D.  Due Process Requirements

Due process requires the satisfaction of two elements to exercise personal jurisdiction over a non-resident defendant:  (1) the nonresident must have some minimum contact with the forum that results from an affirmative act on his part such that the nonresident defendant could anticipate being haled into the courts of the forum state; and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state.  *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474-78 (1985); *Gulf Consolidated Services, Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1073 (5th Cir.), *cert. denied*, 498 U.S. 900 (1990).  The Due Process Clause ensures that persons have a "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)).

To establish minimum contacts with the forum, a nonresident defendant must do some act by which he "purposefully avails [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  However, the unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement.  *Burger King*, 471 U.S. at 474 (quoting *Hanson*, 357 U.S. at 253); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (citing *Kulko v. California Superior Court*, 436 U.S. 84

(1978); *Hanson*, 357 U.S. at 253). In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *Quill Corporation v. North Dakota*, 504 U.S. 298, 307 (1992).

Two types of *in personam* jurisdiction may be exercised over a nonresident defendant: specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard. *J.R. Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quotations and citations omitted). "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'" *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citations omitted), *cert. denied*, 481 U.S. 1015 (1987). General jurisdiction, on the other hand, may be found when the nonresident's contacts with the forum are "continuous and systematic," even though the claim is unrelated to those contacts. *Helicopteros Nacionales*, 466 U.S. at 415-16.

Under either a specific or general jurisdiction analysis, however, "the constitutional touchstone remains whether the defendant purposefully established

'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474 (quoting *International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945)). The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (citations omitted). A plaintiff must establish a substantial connection between the nonresident defendant and the forum state. *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992); *Bearry v. Beech Aircraft Corporation*, 818 F.2d 370, 374 (5th Cir. 1987) (citing *Burger King*, 471 U.S. at 475 n.18; *McGee v. International Life Insurance Company*, 355 U.S. 220, 223 (1957)).

A court must consider all factors when making the purposeful availment inquiry -- "no single factor, particularly the number of contacts, is determinative." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982); see also *Coats v. Penrod Drilling Corporation*, 5 F.3d 877, 884 (5th Cir. 1993), *cert. denied*, 510 U.S. 1195 (1994). When the underlying cause of action is based on an

intentional tort, a single act by the defendant can be sufficient to establish personal jurisdiction if that act gives rise to the claim being asserted. *Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001); see also *FCA Investments Company v. Baycorp Holdings, Ltd.*, 48 Fed. App'x 480 (5th Cir. 2002) (finding that in a claim for the intentional tort of fraud, a single phone call into the forum state is sufficient to establish personal jurisdiction where the content of that phone call was the subject matter of the fraud claim).

### E. Application of the Personal Jurisdiction Standards

#### 1. *General Jurisdiction*

To exercise general jurisdiction over the defendants, the court must find continuous and systematic contacts between the defendants and the state of Texas. *Helicopteros Nacionales*, 466 U.S. at 415-16. The defendants claim to lack sufficient contacts with Texas to support general jurisdiction and Southridge does not contradict these claims or assert sufficient continuous contacts. Memorandum in Support of Defendant's Motion to Dismiss ("Defendants' Memorandum") at 14. Therefore, the court concludes it does not have general jurisdiction over the defendants.

#### 2. *Specific Jurisdiction*

To exercise specific personal jurisdiction over the defendants, the court must find that (1) the movants have established minimum contacts with the state of Texas,

(2) the plaintiff's cause of action is related to those contacts, and (3) the exercise of jurisdiction is consistent with traditional notions of fair play and substantial justice. *Luv N' Care, Limited v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir.), *cert. denied*, ___ U.S. ___, 126 S.Ct. 2968 (2006).

When a trial court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must resolve any factual conflicts in favor of the plaintiff. *Lewis v. Fresne*, 252 F.3d 352, 356 (5th Cir. 2001) (citing *Stripling v. Jordan Production Co.*, 234 F.3d 863, 869 (5th Cir. 2000)). Accordingly, for the purposes of deciding this motion, the court accepts as true the allegations made by Southridge.

Southridge claims that SLE committed several tortious acts directed at Southridge which gave rise to the fraud, conspiracy and negligent misrepresentation claims. Plaintiff's Brief in Support of its Response to Defendant's Motion to Dismiss the Complaint ("Plaintiff's Response") at 7. Among these acts were the internet advertisement, multiple phone calls, a meeting between Smid and Hurst, and the delivery of the signed Letter of Intent. Complaint ¶¶ 8-17. Southridge contends, and SLE does not contest, that these were contacts with the forum. Furthermore, Southridge asserts that these affirmative acts directed at the forum furthered SLE's fraud and conspiracy against Southridge because the defendants did not have the right to sell the property. Plaintiff's Response at 8.

The Fifth Circuit has held that when a party directs purposeful, tortious activity towards a particular forum, he should anticipate being haled into court in that forum.  See *D.J. Investments, Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 547 (5th Cir. 1985) (defendant corporate officer accused of fraud had sufficient contacts as he engaged in correspondence with plaintiff's forum, phoned plaintiff, and visited forum to negotiate); *Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 333-34 (5th Cir. 1982), *cert. denied*, 460 U.S. 1023 (1983) (single defamatory phone call sufficient to create personal jurisdiction); *Union Carbide Corporation v. UGI Corporation*, 731 F.2d 1186, 1190 (5th Cir. 1984) (out of state acts giving rise to tortious injury in forum state were adequate to warrant personal jurisdiction).  While communications directed into a forum alone are insufficient to support a finding of minimum contacts, "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment" because the party has purposely availed itself "of 'the privilege of causing a consequence' in Texas."  *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) (defendant who directed intentional misrepresentations into the forum state through letters, faxes, and phone calls was subject to personal jurisdiction).  The rationale behind this principle is that where a defendant has expressly aimed "intentional, tortious conduct . . . toward the forum state," he necessarily "must

'reasonably anticipate being haled into court there'" to answer for his conduct. *Wien Air*, 195 F.3d at 212 (quoting *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)).

In another example, the Fifth Circuit found minimum contacts when a plaintiff accused the defendant of intentionally defrauding him by lying about the ownership of a store through one telephone call with the plaintiff in Texas and by sending one contract to Texas. *Lewis*, 252 F.3d at 359. Considering these precedents, it is clear that the contacts initiated by the defendants in this case meet the minimum contacts standard for intentional torts.

The second prong of the specific jurisdiction test requires that Southridge's claims be related to the defendants' contacts with Southridge. *Luv N' Care*, 438 F.3d at 469. The defendants argue that the "actual content" of the communications is not fraudulent because its ownership of the equipment is evidenced in the public record. Reply Memorandum of Defendants Regarding Motion to Dismiss the Complaint at 4. Southridge contests this assertion, claiming that SLE's interpretation of the documents is wrong and that the documents do not show SLE's right to sell the property. Plaintiff's Sur-Reply in Opposition to Defendant's Motion to Dismiss the Complaint at 2. Resolving these conflicting views in favor of the plaintiff, the court accepts Southridge's allegations that the "actual content" of the communications supports the plaintiff's fraud claims. Moreover, because the tort claims arise directly

out of the contacts between the defendants and Southridge, they are related, and the second prong is satisfied.

Finally, the court concludes that maintaining this action against the defendants will not offend traditional notions of fair play and substantial justice. *Luv N' Care*, 438 F.3d at 469. If a cause of action for fraud committed against a resident of the forum is directly related to the tortious activities that give rise to personal jurisdiction, an exercise of jurisdiction likely comports with the due process clause, given the obvious interests of the plaintiff and the forum state. *Wien Air*, 195 F.3d at 215. The defendants should have foreseen that their contacts with Southridge in Texas would result in them being subjected to the jurisdiction of a court in Texas. *Burger King*, 471 U.S. at 472-73 ("this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities.") (citations omitted).

Additionally, Texas clearly has an interest because the dispute involves allegations of a corporation with its principal place of business in Texas being defrauded. Therefore, the court finds that it has specific personal jurisdiction over the defendants.

### F. Applicability of Forum Selection Clause

The defendants next argue that the Letter of Intent contains a forum selection clause that vests exclusive jurisdiction with Louisiana courts, making this court an improper venue. Defendants' Memorandum at 17. The Letter of Intent states that "this Letter of Intent does not create a binding contract and will not be enforceable, except in respect of the obligations set out in paragraphs 8, 11, 13, and 14." Complaint, Exh. B ¶ 9. Paragraph 11 provides:

> "Proper Law: This Letter of Intent will be governed by and construed in accordance with the law of the State of Louisiana and the parties hereby attorn to the jurisdiction of the Courts of competent jurisdiction of the State of Louisiana in any proceeding hereunder."

Complaint, Exh. B ¶ 11. The defendants argue that this demonstrates a clear attempt by the parties to make Louisiana the exclusive jurisdiction, while Southridge asserts it is inapplicable. Defendant's Memorandum at 17; Plaintiff's Response at 13. Moreover, if the clause is applicable, Southridge asserts that it is merely a "permissive" clause rather than an exclusive grant of jurisdiction. Plaintiff's Response at 13.

#### 1. *The Scope of the Forum-Selection Clause*

The court must first decide whether the forum selection clause applies to the types of claims asserted in the plaintiff's complaint. To make this decision, the court looks "to the language of the parties' contracts to determine which causes of action

are governed by the forum selection clause[]." *Marinechance Shipping, Limited v. Sebastian*, 143 F.3d 216, 222 (5th Cir.), *cert. denied*, 525 U.S. 1055 (1998). "[I]f the *substance* of [the plaintiff's] claims, stripped of their labels, does not fall within the scope of the [forum selection] clause[], the clause[] cannot apply." *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir.), *cert. denied*, 510 U.S. 945 (1993) (emphasis in original). Additionally, the court must examine both tort and contractual claims to determine whether they are governed by the forum selection clause. *Marinechance Shipping*, 143 F.3d at 221-22 ("[w]e find no persuasive support for . . . [a contract versus tort] distinction"). Ultimately, "'[w]hether a forum selection clause applies to tort claim[s] depends on whether resolution of the claims relates to interpretation of the contract.'" *Psarros v. Avior Shipping, Inc.*, 192 F. Supp. 2d 751, 754 (S.D. Tex. 2002) (quoting *Manetti-Farrow v. Gucci America*, 858 F.2d 509, 514 (9th Cir. 1988)).

The parties disagree on the scope of the language contained in the Letter of Intent and how it should be interpreted. Southridge interprets the term "hereunder" to mean that the disputes covered by the clause include those arising out of the Letter of Intent. Plaintiff's Response at 12. Other courts analyzing contractual forum selection clauses containing "hereunder" have held that the clauses governed disputes that arose "as a result of" the contract. See *Picken v. Minuteman Press International, Inc.*, 854 F. Supp. 909, 911-12 (N.D. Ga. 1993) ("Reading the word 'hereunder' to apply only to a pure breach of contract claim between the parties would be unduly

crabbed and narrow. 'Hereunder' refers to the relations that have arisen as a result of this contract."). This court agrees; the language at issue in this case -- "in any proceeding hereunder" -- is sufficiently broad to cover both contract and tort claims. Consequently, the court must examine whether the plaintiff's tort claims arose "as a result of" the Letter of Intent.

Southridge claims that each of its allegations concerns "pre-contract fraudulent acts of the Defendants." Plaintiff's Response at 12. This assertion is inconsistent with some allegations in the complaint, which repeatedly refer to the misrepresentations made during negotiations and in the Letter of Intent. Complaint ¶¶ 16, 17, 23, 30, 36. In its original complaint, however, Southridge also alleges that the defendants intentionally made material misrepresentations to Southridge concerning "SLE's ownership interest in the ethanol plant equipment that was the subject of the parties' negotiations *and the letter of intent*." Complaint ¶¶ 30, 36 (emphasis added). Because these representations of the defendants' right to transfer the property were included in the Letter of Intent, an assertion that the representations were tortious arises as a result of the Letter of Intent as well as the parties' previous discussions. Accordingly, the forum selection clause in the Letter of Intent is applicable to the plaintiff's complaint.

2. *Mandatory Versus Permissive Clauses*

Before determining whether a forum selection clause should be enforced, the court must determine whether the clause is mandatory or permissive. *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir. 1994). When a party consents to jurisdiction in one forum, it does not necessarily waive its right to have its case heard in another. *City of New Orleans v. Municipal Administrative Services, Inc.*, 376 F.3d 501, 504 (5th Cir. 2004), *cert. denied*, 543 U.S. 1187 (2005). "For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive." *Id.* (citing *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955 (5th Cir. 1974)). While a permissive forum selection clause allows a suit to proceed in the forum named, it does not bar the litigation from proceeding in a different forum. *Caldas*, 17 F.3d at 128.

The forum selection clause at issue merely establishes that jurisdiction is proper in Louisiana rather than clearly making that forum exclusive. The language of the Letter of Intent states that the parties "attorn to the jurisdiction of the Courts . . . of Louisiana in any proceeding hereunder." Complaint, Exh. B ¶ 11. The clause does not contain the more explicit exclusionary language included in the mandatory forum selection clauses cited as examples by the defendants.[2] Moreover, the language the

---

[2] The cases cited by the defendants, Defendants' Memorandum at 17
(continued...)

letter does use is insufficient to clearly demonstrate the parties' intent to make jurisdiction exclusive.

A clause with similar language was found to be permissive in *Magellan Real Estate Investment Trust v. Losch*, 109 F. Supp. 2d 1144, 1149 (D. Ariz. 2000). That clause read, "The parties hereto irrevocably attorn to the jurisdiction of the courts of the Province of Ontario to resolve any dispute which may arise among them concerning this Agreement and the subject matters hereof." *Id.* Similarly, the forum selection clause in the case *sub judice* is permissive and does not vest exclusive jurisdiction in the courts of Louisiana. Therefore, this court is a proper venue for the resolution of this suit.

---

²(...continued)
nn.94-100, all analyze forum selection clauses with clear language making them mandatory rather than permissive. See *Argyll Equities LLC v. Paolino*, 211 Fed. App'x 317, 318 (5th Cir. 2006) ("Borrower hereby consents to the *exclusive* jurisdiction of the courts sitting in Kendall County, Texas") (emphasis added); *M/S Bremen v. Zapata Off-Shore Company*, 407 U.S. 1, 2 (1972) ("Any dispute arising *must be treated* before the London Court of Justice") (emphasis added); *Maley v. Design Benefits Plan, Inc.*, 125 F. Supp. 2d 836, 838 (E.D. Tex. 2000) ("*Venue for any action, suit or other proceeding, including non-contract disputes,* shall be exclusively *in Winnebago County, Illinois*") (italics in original, emphasis added); *Dixon v. TSE International, Inc.*, 330 F.3d 396, 397 (5th Cir. 2003) ("*The Courts of Texas, U.S.A.,* shall have jurisdiction over all controversies *with respect to the execution, interpretation or performance of this Agreement, and the parties* waive any other venue *to which they may be entitled by virtue of domicile or otherwise*") (italics in original, emphasis added).

## III. CONCLUSION

For the reasons stated above, the defendants' motion for an evidentiary hearing is **DENIED**. The defendants' motion to dismiss for lack of personal jurisdiction and for improper venue is also **DENIED**.

**SO ORDERED**.

August 16, 2007.

                                                A. JOE FISH
                                                CHIEF JUDGE